COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bumgardner and Kelsey
Argued at Alexandria, Virginia


M. G.
                                        OPINION BY
v.    Record No. 0230-03-2         JUDGE LARRY G. ELDER
                                        JULY 22, 2003
ALBEMARLE COUNTY DEPARTMENT
 OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                   Paul M. Peatross, Jr., Judge

            Bonnie J. Lepold (Snook & Haughey, P.C., on
            briefs), Guardian ad litem for appellant.

            Andrew H. Herrick (Larry W. Davis; Albemarle
            County Attorney's Office, on brief), for
            appellee.


     M.G. (mother) appeals from an order terminating her

parental rights to her children, a daughter, M., and a son, R.

On appeal, she contends termination under Code

§ 16.1-283(E)(iii) was error because the evidence failed to

establish that she was convicted for "felony sexual assault" or

that termination was in the best interests of the children.

Appellee, the Albemarle County Department of Social Services

(DSS), contends this Court lacks jurisdiction to consider the

appeal because mother failed to join the children's guardian ad

litem.  In the alternative, DSS contends the appeal is barred

because mother failed to give proper notice of her filing of the

trial transcript.  We hold that both the appeal and the trial

transcript are properly before us.  We hold further that mother's federal conviction was for "felony sexual assault" within the meaning of the termination statute and that the evidence was sufficient to support the termination.  Thus, we affirm.[1]

## I.

## PROCEDURAL BACKGROUND

M. was born in 1991, and R. was born in 1993.  Mother's husband, a member of the military who was the father of R. but not the father of M., was convicted of multiple criminal sexual offenses committed against both children while the family lived on a military base in North Carolina, and he was incarcerated as a result.  Mother subsequently moved to Virginia to live with her family, and when mother was indicted for related offenses and held pending extradition, she signed an entrustment agreement with the Albemarle County Department of Social Services (DSS).

By order entered June 25, 2002, mother was convicted for abusive sexual contact in violation of 18 U.S.C. § 2244(a)(1) and (c) and contributing to the delinquency of a minor pursuant to 18 U.S.C. § 3, in conjunction with North Carolina Gen. Stat. § 14-316.1.  That contact involved mother's son, R.  As a result

---

[1] As noted in footnote 3 and Part II.A., we grant DSS's pending motion to strike mother's affidavits and deny DSS's motion to dismiss the appeal.

of those convictions, DSS sought termination of mother's

parental rights.  A guardian ad litem was appointed for the

children and also for mother based on her incarceration.  The

juvenile and domestic relations district court terminated

mother's parental rights under Code § 16.1-283(E)(iii), and

mother appealed.  Thereafter, mother was sentenced on the

federal convictions to serve 70 months in prison and to undergo

three years of supervised probation, during which time the court

ordered that mother "shall not have any contact with the

victims" or "any child under age 18."

The circuit court terminated mother's parental rights based

on a finding that mother's conviction for violation of 18 U.S.C.

§ 2244(a)(1) and (c) justified termination under Code

§ 16.1-283(E)(iii) because her conviction was for "a crime which

constitutes felony sexual assault under the Code of Virginia."

The court also found that termination was in the children's best

interests.[2]

---

[2] At the hearing, DSS raised "aggravated circumstances [under] . . . [Code §] 16.1-283(E)[(iv)]" as an alternative basis for termination of mother's parental rights.  DSS explained that "the aggravated circumstances provision . . . was just added July 1st of 2002.  Our petition was filed March 29th of 2002.  So at the time the petition was filed in J and D R Court, I don't believe the aggravated circumstances alternative was even a possibility for social services at that point." However, DSS did not expressly move to amend the petition.
The trial court, in framing "[t]he issue" as whether mother's federal conviction "constitutes a felony sexual assault under 16.1-283(E)(iii)," implicitly refused to amend the petition and did not consider whether termination could occur

Mother's guardian ad litem filed a timely notice of appeal in the circuit court. The certificate included as part of the notice of appeal indicated that "A Guardian ad litem was appointed for the children as well as the Defendant mother (incarcerated at the time of the proceedings)." Neither the notice nor the certificate identified the children's guardian ad litem by name or indicated that mother served the children's guardian with a copy of the notice of appeal. Mother submitted a cover letter with the notice of appeal, which letter (1) stated that "a Notice of Appeal" was enclosed and (2) included the notation, "Cc: Andrew H. Herrick, Esq.[;] William M. Marshall, Esq." Although that letter did not specifically identify Marshall as the children's guardian ad litem, other documents in the trial court's record confirmed his status as their guardian.

## II.

### PROCEDURAL ISSUES

#### A.

#### DEFICIENCIES IN NOTICE OF APPEAL AND ACCOMPANYING CERTIFICATE

DSS moves to dismiss the appeal on the ground that this Court lacks jurisdiction because of deficiencies in mother's notice of appeal. DSS argues that mother "fail[ed] to join the children's Guardian ad litem as a party to the case" because she

___

based on a finding of aggravated circumstances under subsection (E)(iv). (Emphasis added).

failed to certify in her notice of appeal that she mailed or delivered a copy of the notice to all opposing counsel, i.e., the children's guardian <u>ad</u> <u>litem</u>. It also complains that the notice failed to list the name and address of appellant; name, address and telephone number of counsel for appellant; and name, address and telephone number of appellee's counsel. Mother argues she substantially complied with the requirements of Rule 5A:6 because she in fact notified the guardian of the filing in a timely fashion, as indicated by the cover letter attached to the notice of appeal.[3]

Rule 5A:6 provides in relevant part as follows:

> (a) Timeliness. - No appeal shall be allowed unless, within 30 days after entry of final judgment or other appealable order or decree, counsel files with the clerk of the trial court a notice of appeal, and at the same time mails or delivers a copy of such notice to all opposing counsel and the clerk of the Court of Appeals. . . .

>     *     *     *     *     *     *     *

> (d) Certificate. - The appellant shall include with the notice of appeal a certificate stating:

---

[3] With the motion, mother filed affidavits from herself and the children's guardian <u>ad</u> <u>litem</u> swearing that mother did, in fact, serve the notice on the children's guardian. DSS moves to strike the affidavits because they were not part of the record before the trial court.

Under settled principles, we may not consider evidence that was not offered to the trial court unless such consideration is specifically authorized by statute or rule of court. <u>See, e.g.</u>, <u>Kidder v. Va. Birth-Related Neurological Injury Comp. Pgm.</u>, 37 Va. App. 764, 780 n.5, 560 S.E.2d 907, 914 n.5 (2002). Thus, we grant DSS's motion to strike the affidavits.

(1) the names and addresses of all appellants and appellees, the names, addresses, and telephone numbers of counsel for each party, and the address and telephone number of any party not represented by counsel; and

(2) that a copy of the notice of appeal has been mailed or delivered to all opposing counsel . . . .

"We have held that the failure to file a notice of appeal with the clerk of the trial court within 30 days after entry of final judgment as required in Rule 5A:6(a) is jurisdictional and that we have no authority to extend the time . . . ." Johnson v. Commonwealth, 1 Va. App. 510, 512, 339 S.E.2d 919, 920 (1986). Further, in a suit involving a termination of parental rights, a guardian ad litem for the child or children is an indispensable party to the appeal and, thus, qualifies as an "opposing counsel" under Rule 5A:6(a), to whom the appellant has a duty to mail or deliver a copy of the notice of appeal. Hughes v. York County Dep't of Soc. Servs., 36 Va. App. 22, 25-26, 548 S.E.2d 237, 238-39 (2001). Thus, we have held that where the certificate accompanying the notice of appeal does not list the name and address of the guardian ad litem and "[t]he record reflects that [the] appellant failed to provide the guardian ad litem with the notice of appeal or the opening brief[,] [t]he guardian ad litem was not . . . made a party to the appeal," and the appeal must be dismissed. Id. Under these circumstances, the court never acquires jurisdiction over the

indispensable party.  Asch v. Friends of the Community of the Mount Vernon Yacht Club, 251 Va. 89, 93, 465 S.E.2d 817, 819 (1996).

We have never held, however, that Rule 5A:6(d)'s provisions regarding the contents of the accompanying certificate are jurisdictional.  The fact that subsection (d) states the certificate "shall include" certain information does not compel a different result.  Cf. Riner v. Commonwealth, 40 Va. App. 440, 454, 579 S.E.2d 671, 678 (2003) (holding that, as long as petition for appeal is timely filed, "the provisions of Rule 5A:12(c) stating what the petition 'shall contain' . . . are not jurisdictional" and "do not prevent us from exercising jurisdiction over assignments of error added to the petition, with leave of court, at a later date").  Thus, we have jurisdiction over both the appeal itself and the guardian ad litem, an indispensable party, as long as the record establishes that, "within 30 days after entry of final judgment or other appealable order or decree, counsel file[d] with the clerk of the trial court a notice of appeal, and at the same time mail[ed] or deliver[ed] a copy of such notice to all opposing counsel . . . ."  Rule 5A:6(a).

Here, the certificate accompanying the notice of appeal indicated that a guardian ad litem had been appointed for the children.  Although the certificate did not indicate whether mother mailed a copy of the notice to the children's guardian ad

litem, the notice of appeal was accompanied by a cover letter signed by mother's guardian ad litem that did, in fact, provide such information. The letter indicated (1) that it accompanied the notice of appeal and (2) that a courtesy or carbon copy was provided to William M. Marshall, Esq., whom other documents established was the children's guardian ad litem. Thus, the record establishes that appellant complied with the requirements of Rule 5A:6(a) by "mail[ing] or deliver[ing] a copy of such notice to all opposing counsel."[4] See also Code § 8.01-271.1 (providing that "signature of an attorney or party [on a pleading, motion, or other paper] constitutes a certificate by him that (i) he has read the pleading, motion, or other paper, [and] (ii) to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact" and that sanctions may be imposed for violations of statute).

Further, although the certificate itself omitted other information required by Rule 5A:6(d), other portions of the notice contained everything but appellant's address,[5] the name and address of the appellee, and the telephone number for

---

[4] Unlike in Hughes, 36 Va. App. at 26, 548 S.E.2d at 239, the certificates of service accompanying mother's appendix designation and questions to be presented as well as her opening and reply briefs all certify that copies of the designation and briefs also were served on William Marshall, guardian ad litem for the children.

[5] The certificate indicated that mother was incarcerated but did not state where she was incarcerated.

appellee's counsel.  The certificate clearly indicated that mother provided appellee's counsel with notice of the appeal.

"[W]e do not minimize the necessity of adherence to the mandate of the Rule[s] by members of the bar.  We consider the requirement[s] in the Rule[s] to be significant and one[s] that should not be ignored."  Johnson, 1 Va. App. at 513, 339 S.E.2d at 921.  However,

> [b]ecause appellant did in fact file a [timely] notice of appeal, and because the purpose of Rule 5A:6 was met, notice being given to appellees of continuing litigation, we hold that, under the facts of this case, dismissal for failure to satisfy the rules governing notice of appeal is unwarranted. Our construction of the rule assures judicial review of a decision affecting substantial interests without compromising either the rule or appellee's rights.

Carlton v. Paxton, 14 Va. App. 105, 111, 415 S.E.2d 600, 603 (holding court acquired jurisdiction over appeal where notice of appeal was timely filed and properly styled to appeal May 11, 1990 adoption order but erroneously referred to order being appealed as one entered on April 22, 1986), aff'd on reh'g en banc, 15 Va. App. 265, 422 S.E.2d 423 (1992).  We hold that omission of the above-mentioned information was not jurisdictional, and we deny DSS's motion to dismiss the appeal.

B.

FAILURE TO GIVE NOTICE OF FILING OF TRANSCRIPT

DSS contends mother's failure to comply with Rule 5A:8 precludes our consideration of the transcript of proceedings in the trial court.  We disagree.

Rule 5A:8(a) provides that "[t]he transcript of any proceeding is a part of the record when it is filed in the office of the clerk of the trial court within 60 days after entry of the final judgment."  Subsection (b) of the rule states that "counsel for appellant shall," within the time frame specified in the rule, "(1) give written notice to all other counsel of the date on which the transcript was filed, and (2) file a copy of the notice with the clerk of the trial court."  That subsection also details the circumstances under which an appellee who has not received timely notice of the filing under the rule may seek to have the offending transcript stricken from the record:

> Any failure [by an appellant] to file the notice required by this Rule that materially prejudices an appellee will result in the affected transcript[] being stricken from the record on appeal.  For purposes of this Rule, material prejudice includes preventing the appellee from raising legitimate objections to the contents of the transcript or misleading the appellee about the contents of the record. The appellee shall have the burden of establishing such prejudice in the brief in opposition or, if no brief in opposition is filed, in a written statement filed with the clerk of the Court of Appeals within

> twenty-one days after the record is received
> by the clerk.

Rule 5A:8(b).

Here, appellant filed the transcript in a timely fashion under Rule 5A:8(a) but did not give written notice of that filing to opposing counsel, with a copy filed in the trial court. DSS contends that, as a result, its "counsel was not afforded the opportunity to review the trial transcript." DSS does not, however, allege that this failure "prevent[ed] [it] from raising legitimate objections to the contents of the transcript," "misle[d] [it] about the contents of the record," or disadvantaged it in any other way that would constitute material prejudice under Rule 5A:8(b). Thus, we hold the challenged transcript is properly a part of the record before us on appeal.

### III.

### SUFFICIENCY OF THE EVIDENCE TO SUPPORT
### PARENTAL RIGHTS TERMINATION

On appeal of an action to terminate residual parental rights, we view the evidence in the light most favorable to the party prevailing below and afford the evidence all reasonable inferences fairly deducible therefrom. Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). The trial court's judgment, "when based on evidence heard ore tenus, will not be disturbed on appeal unless plainly

wrong or without evidence to support it."  Peple v. Peple, 5

Va. App. 414, 422, 364 S.E.2d 232, 237 (1988).

The trial court granted DSS's petition to terminate

mother's parental rights under Code § 16.1-283(E)(iii).  That

code section provides in relevant part as follows:

> The residual parental rights of a
> parent . . . of a child who is in the
> custody of a local board or licensed
> child-placing agency may be terminated by
> the court if the court finds, based upon
> clear and convincing evidence, that it is in
> the best interests of the child and that
> . . . (iii) the parent has been convicted of
> an offense under the laws of this
> Commonwealth or a substantially similar law
> of any other state, the United States or any
> foreign jurisdiction that constitutes . . .
> felony sexual assault, if the victim of the
> offense was a child of the parent or a child
> with whom the parent resided at the time of
> such offense . . . .

Code § 16.1-283(E).

A.

"FELONY SEXUAL ASSAULT" UNDER CODE § 16.1-283(E)(iii)

1.  Sexual Assault Under Virginia Law

Mother contends her federal conviction did not support the

termination of her parental rights because it did not constitute

a conviction for "felony sexual assault" as that term is used in

Code § 16.1-283(E)(iii).  We disagree.

"In construing statutes, courts are charged with

ascertaining and giving effect to the intent of the

legislature."  Crown Cent. Petroleum Corp. v. Hill, 254 Va. 88,

91, 488 S.E.2d 345, 346 (1997). "[A] fundamental rule of statutory construction requires that courts view the entire body of legislation and the statutory scheme to determine the 'true intention of each part.'" Virginia Real Estate Bd. v. Clay, 9 Va. App. 152, 157, 384 S.E.2d 622, 625 (1989) (quoting McDaniel v. Commonwealth, 199 Va. 287, 292, 99 S.E.2d 623, 627 (1957)). In interpreting a statute, "'[t]he Code of Virginia constitutes a single body of law, and other sections can be looked to where the same phraseology is employed.'" Hart v. Commonwealth, 18 Va. App. 77, 79, 441 S.E.2d 706, 707 (1994) (quoting King v. Commonwealth, 2 Va. App. 708, 710, 347 S.E.2d 530, 531 (1986)).

Mother argues that Code § 16.1-283(E)(iii) does not define "felony sexual assault" and that "there is no criminal offense known as 'felony sexual assault' in Virginia's own criminal code." Mother is correct that no single offense in the Virginia Code is known as "felony sexual assault" and that the only offense referred to as "sexual assault" is "marital sexual assault," as proscribed in Code § 18.2-67.2:1. What mother overlooks, however, is that the caption for the entire article within which the offense of marital sexual assault is contained is "Criminal Sexual Assault." See 1981 Va. Acts 518, ch. 397. The legislature itself chose this caption when it revised Virginia's rape statute and enacted additional statutes defining

and proscribing various other sexual offenses.[6]  See id.  Thus,

we hold that, when the legislature amended Code § 16.1-283 in

1998 and added language permitting termination of the parental

_____

[6] We recognize Code § 1-13.9 provides that

> The headlines of the several sections of
> this Code printed in black-face type are
> intended as mere catchwords to indicate the
> contents of the sections and shall not be
> deemed or taken to be titles of such
> sections, nor as any part thereof, nor,
> unless expressly so provided, shall they be
> so deemed when any of such sections,
> including the headlines, are amended or
> reenacted.

However, the Code distinguishes between "[t]he headlines of the
several sections of th[e] Code" and the "captions" of the Code.
The legislature defines the term "caption" as "that word or
group of words appearing directly below the numerical
designation given the subtitle, chapter or article."  Code
§ 1-13.9:1 (emphasis added).  Unlike the contents of Code
§ 1-13.9 regarding the "headlines" of code "sections," the code
contains no provision stating that captions of subtitles,
chapters or articles "are intended as mere catchwords," and it
expressly provides that a "subtitle, chapter or article may be
cited by its caption" where no "section or provision
establish[es] or authoriz[es] a short title citation for such
subtitle, chapter or article."  Here, the legislature expressly
chose the "Criminal Sexual Assault" caption and used that
caption in various other statutes to refer to that article in
the code.  See Code § 32.1-162.9:1 (prohibiting licensed home
health care organizations from employing "persons who have been
convicted of . . . sexual assault as set out in Article 7
(§ 18.2-61 et seq.) of Chapter 4 of Title 18.2"); Code
§ 53.1-131.2 (providing that "any offender who is convicted of
any of the following violations of Chapter 4 (§ 18.2-30 et seq.)
of Title 18.2 shall not be eligible for participation in the
home/electronic incarceration program: . . . (vi) any criminal
sexual assault punishable as a felony under Article 7 (§ 18.2-61
et seq.)"); § 65.2-301 (providing possibility of recovering
workers' compensation for an "employee who in the course of
employment, is sexually assaulted, as defined in §§ 18.2-61,
18.2-67.1, 18.2-67.3, or § 18.2-67.4").

rights of a parent convicted of "felony sexual assault" under certain circumstances, see 1998 Va. Acts 1306, ch. 550, it intended by that reference to include all felony sexual assault offenses contained in Chapter 4, Article 7, of Title 18.2.

We also hold that mother's conviction for "Abusive Sexual Contact" pursuant to 18 U.S.C. § 2244(a)(1)[7] was an offense "substantially similar" to a qualifying sexual offense under Virginia law. 18 U.S.C. § 2241(c) defines aggravated sexual abuse as "knowingly engaging in a sexual act with another person who has not attained the age of 12 years . . . or attempt[ing] to do so." (Emphasis added). 18 U.S.C. § 2244(a)(1) proscribes as a felony[8] "knowingly engag[ing] in or caus[ing] sexual contact with or by another person, if [doing] so . . . would violate . . . section 2241 of this title had the sexual contact been a sexual act." (Emphasis added). Thus, one violates 18 U.S.C.

---

[7] Mother was convicted for violating "18 U.S.C. § 2244(a)(1) & (c)." Subsection (c) merely provides that "[i]f the sexual contact that violates this section is with an individual who has not attained the age of 12 years, the maximum term of imprisonment that may be imposed for the offense shall be twice that otherwise provided in this section."

[8] The statute provides for punishment of up to ten years, 18 U.S.C. § 2244(a)(1), and permits the imposition of a maximum sentence of "twice that otherwise provided in this section" if the behavior occurred with an individual who has not yet attained the age of 12 years," 18 U.S.C. § 2244(c). A felony is defined as a crime punishable by death or imprisonment for more than one year. See Turner v. Commonwealth, 38 Va. App. 851, 856, 568 S.E.2d 468, 470 (2002). Mother conceded at trial that her federal conviction for abusive sexual contact was a felony conviction.

§ 2244(a)(1) by "knowingly engaging in [sexual <u>contact</u>] with another person who has not attained the age of 12 years . . . or attempt[ing] to do so."  "[S]exual contact" is defined as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).

Virginia's Code § 18.2-67.3 defines aggravated sexual battery as encompassing the sexual abuse of a complaining witness who is less than thirteen years of age and proscribes the offense as a felony.  "Sexual abuse" is defined as "an act committed with the intent to sexually molest, arouse, or gratify any person, where . . . [t]he accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts" or "forces the complaining witness to touch the accused's, the witness's own, or another person's intimate parts or the material directly covering such intimate parts."  Code § 18.2-67.10(6).  Finally, "'[i]ntimate parts' means the genitalia, anus, groin, breast or buttocks of any person."  Code § 18.2-67.10(2).

Thus, we affirm the trial court's conclusion that mother's "federal conviction" for "abusive sexual contact . . . amounts to a felony sexual assault equivalent to aggravated sexual battery [under Virginia law], a felony."  Mother in effect

concedes on brief that her federal conviction constituted a finding of "sexual contact through the clothing of the child" but argues that "skin-to-skin contact or penetration" was required to establish felony sexual assault under Virginia law. Based on our holding that felony sexual assault encompasses all felony offenses proscribed by Title 18.2, Chapter 4, Article 7-- including aggravated sexual battery as prescribed in Code § 18.2-67.3--we reject this contention.

2.  Motion for Continuance Pending Appeal of Federal Conviction

Mother also contends that the trial court erroneously denied her motion for a continuance to await the outcome of her appeal of the federal conviction upon which the termination of parental rights was based.

> Generally, [whether to grant a]
> continuance[] rest[s] "within the sound
> discretion of a trial court, and its ruling
> will not be disturbed on appeal unless it is
> plainly wrong."  Lomax v. Commonwealth, 228
> Va. 168, 172, 319 S.E.2d 763, 765 (1984)).
> . . .  [A] trial court shall not deny a
> continuance, if, to do so, "'seriously
> imperil[s] the just determination of the
> cause.'"  Mills v. Mills, 232 Va. 94, 96,
> 348 S.E.2d 250, 252 (1986) (quoting Myers v.
> Trice, 86 Va. 835, 842, 11 S.E. 428, 430
> (1890)).

Doe v. Doe, 15 Va. App. 242, 246, 421 S.E.2d 913, 916 (1992). We hold the trial court did not abuse its discretion in denying her motion for a continuance.

In drafting Code § 16.1-283, the legislature required a finding merely that the parent whose rights are to be terminated

"has been <u>convicted</u> of an offense . . . that constitutes felony sexual assault."  Code § 16.1-283(E)(iii) (emphasis added).  It did not require that any appeals related to that conviction be exhausted.

Although the term, "conviction," has been "differently defined" through the years, the Supreme Court has said that where the prior conviction establishes an element of a crime, that is,

> "where the reference is to the ascertainment of guilt in another proceeding in its bearings upon the status or rights of the individual in a subsequent case, . . . a 'conviction' is . . . established [or] a person [is] deemed to have been 'convicted' . . . [where] it is shown [that the fact finder has rendered a verdict and] that a judgment has been pronounced upon the verdict."

<u>Smith v. Commonwealth</u>, 134 Va. 589, 598, 113 S.E. 707, 710 (1922) (interpreting meaning of statute authorizing removal of various public officials "who shall have been convicted" of specified offenses) (quoting <u>People v. Fabian</u>, 85 N.E. 672, 675 (N.Y. 1908)), <u>cited with approval in</u> <u>Jewel v. Commonwealth</u>, 260 Va. 430, 432, 536 S.E.2d 905, 906 (2000) (discussing principle in context of impeachment with prior felony convictions); <u>see also</u> <u>Webb v. Commonwealth</u>, 31 Va. App. 466, 470, 524 S.E.2d 164, 166 (2000) (relying in part on <u>Smith</u> to hold "[i]t is . . . now well established in our jurisprudence that a 'conviction' ordinarily embraces both an adjudication of guilt and a related

sentence, thus concluding the prosecution by final order"). Whether an appeal has been noted or is pending generally is not relevant in this context.  See also Royal v. Commonwealth, 250 Va. 110, 118, 458 S.E.2d 575, 579 (1995) (noting that, on issue of future dangerousness in capital case, "the trial court was entitled to consider Royal's prior murder conviction even though that conviction was on appeal at the time of sentencing"); Patterson v. Commonwealth, 12 Va. App. 1046, 1047-48, 407 S.E.2d 43, 44 (1991) (holding court may revoke suspended sentence based solely on conviction for another offense, without consideration of underlying facts supporting that conviction, committed during the probationary period regardless of whether conviction for subsequent offense is on appeal).

Giving the language used by the legislature in Code § 16.1-283(E)(iii) its plain meaning, we hold that whether a person has been convicted of felony sexual assault as that term is used in the statute depends upon whether a final order has been entered by the trial court and does not depend on whether that final order has been appealed.  Had the legislature wished to provide that a felony sexual assault conviction could not be used as a predicate for the termination of parental rights unless all appeals had been exhausted, it could have said so in the statute.  The legislature's recognition of the need for a

reasonably swift resolution in foster care and termination cases[9] further supports the conclusion that the legislature did not intend for a court considering such a petition to have to await the outcome of an appeal of a conviction serving as the predicate for the termination.

Based on the language of the statute, we hold that the trial court did not abuse its discretion in denying mother's motion for a continuance pending the outcome of her appeal on the predicate federal conviction.

B.

BEST INTERESTS OF THE CHILDREN

Code § 16.1-283(E) requires proof by clear and convincing evidence not only that the parent was convicted of felony sexual assault of a child of the parent or a child with whom the parent resided but also that the termination of parental rights is in the best interests of the specific child or children regarding whom termination is sought.  The particular facts upon which a parent's felony conviction for sexually assaulting her child was based may constitute clear and convincing evidence that termination of the parent's rights is in the best interests of the child assaulted or any other child in her legal or physical custody.  In this opinion, we address only the specific facts of this case.  Although "'the rights of parents may not be lightly

_____

[9] Several statutes show this recognition.  See, e.g., Code §§ 16.1-252(H), 16.1-281, 16.1-282(E), 16.1-283, 16.1-269(D).

severed,'" <u>Ward v. Faw</u>, 219 Va. 1120, 1124, 253 S.E.2d 658, 661 (1979) (quoting <u>Malpass v. Morgan</u>, 213 Va. 393, 400, 192 S.E.2d 794, 799 (1972)), "trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests," <u>Farley v. Farley</u>, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990).  Under the facts of this case, we analyze the best interests issue in terms of both (1) the length of time mother will be legally unable to exercise physical custody of the children due to her incarceration and conditions of probation and (2) the nature of the acts that led to the conviction for sexually abusing R., as well as other acts and omissions of mother bearing on the best interests of both children.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." <u>Kaywood v. Halifax County Dep't of Soc. Servs.</u>, 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).  Here, the evidence established that, based solely on the fact of mother's conviction, it was unlikely that she would be able to resume her parental responsibilities in the near future.  Foster care social worker Sarah Klegar, a licensed clinical social worker with a master's degree in social work, testified that she had been the children's social worker for over a year prior to the circuit court termination hearing on October 23, 2002.

Klegar testified that both mother and her husband, R.'s father, were incarcerated at that time. The whereabouts of M.'s father were unknown, and his parental rights had already been terminated.

Mother had been sentenced to serve five years ten months in prison, and her conviction required three years of supervised probation upon her release, one of the conditions of which was that she could have no contact with her children during that period of time. Based upon those conditions, Klegar testified that the earliest mother could again have contact with the children would be when M. was 21 and R. was 19. Klegar explored the possibility of placing the children with relatives in lieu of terminating mother's parental rights, but "no[] [relatives] ha[d] been found to be appropriate."

Further, Klegar opined that, even if mother's federal conviction and the provision barring contact with her children were overturned on appeal, Klegar would require, at a minimum, that any visitation between mother and the children be supervised. Klegar said further that she would want to talk to the children's therapist about whether they should have any contact with mother at all.

Although the precise basis for mother's federal conviction was not clear from the record, the evidence established that the conviction was for abusive sexual contact of her son, R. The limited substantive evidence that was introduced in the

termination proceedings permitted a finding that, in addition to the acts supporting her conviction for abusive sexual contact with R., mother had exercised poor judgment relative to both children and that this poor judgment had resulted in psychological harm to both children.

Klegar testified that it was in the best interest of the children, who were nine and eleven at the time of the circuit court hearing, "to be adopted, to have a permanent home that they know where they're going to grow up, they have a sense of identity, they have a sense of belonging. Children need that to feel safe and grow and develop." She also testified that she had had an opportunity to review "in detail" the recent psychological evaluations done on the children. She noted the children "have numerous psychological diagnoses" as a result of "what's happened to them"[10] and that M. "has numerous behavior problems," as well.

---

[10] Mother's guardian ad litem objected to this testimony after it had been given. The trial court "sustain[ed the objection as to] any hearsay." However, mother's attorney did not move to strike any of the testimony already given, thereby rendering it part of the record for purposes of appeal. See Kent Sinclair, Joseph C. Kearfoot, Paul F. Sheridan & Edward J. Imwinkelried, Virginia Evidentiary Foundations § 2.4[A], at 20 (1998); see also 1 John W. Cooley, Callaghan's Appellate Advocacy Manual: Lawyer's Edition § 3.09, at 29 (1993). Although she objected in closing to the court's crediting the social worker's testimony about "the effect the sexual abuse has had on the children" because Klegar was "not a therapist" or "a psychiatrist" and had gathered her information "from other people," she also argued the relevance of the testimony as if it were a part of the record, contending, "[w]e do not know whether . . . these . . . diagnoses that the children have were a direct

Finally, the children's guardian <u>ad</u> <u>litem</u> also opined that termination was in the children's best interests.

This evidence, viewed in the light most favorable to DSS, was sufficient to support the trial court's finding, by clear and convincing evidence, that termination of mother's parental rights was in the best interests of both children.

IV.

In sum, we hold that both the appeal and the trial transcript are properly before us.  We hold further that mother's federal conviction was for "felony sexual assault" within the meaning of the termination statute and that the evidence was sufficient to prove, by clear and convincing evidence, that termination was in the children's best interests.  Thus, we affirm.

<u>Affirmed.</u>

---

result of sexual abuse."  The manner in which the testimony was given permitted the trial court to conclude that these diagnoses were, in fact, a direct result of the sexual abuse.