COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, McClanahan and Senior Judge Bumgardner
Argued at Richmond, Virginia


ROBERT WAYNE BROOKS

v.      Record No. 1748-07-2

SPOTSYLVANIA DEPARTMENT                    MEMORANDUM OPINION[*] BY
  OF SOCIAL SERVICES                        JUDGE ROBERT J. HUMPHREYS
                                                    MAY 6, 2008
DARLENE WALLACE

v.      Record No. 1761-07-2

SPOTSYLVANIA DEPARTMENT
  OF SOCIAL SERVICES[1]


              FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
                            Jay T. Swett, Judge

       Jean Masten Kelly for Robert Wayne Brooks.

       Timothy W. Barbrow (The Law Office of Timothy Barbrow, on brief),
       for Darlene Wallace.

       Joseph A. Vance; Joseph W. Gorrell, Guardian *ad litem* for the minor
       child (Joseph A. Vance, IV, P.C., on brief), for appellee.


       In these consolidated appeals, Robert Wayne Brooks ("father") and Darlene Wallace

("mother"), appeal an order of the Spotsylvania County Circuit Court ("circuit court")

terminating their residual parental rights to their minor child, C.B.  Father and mother argue that

(1) the evidence was insufficient to terminate their parental rights, (2) the evidence was

insufficient to prove that they have been unwilling or unable to remedy substantially the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] At the request of the parties and guardian *ad litem* these appeals have been consolidated
for oral argument and decision.

conditions which led to or required the continuation of the child's foster care placement,[2] (3) the evidence was insufficient to change the permanency planning goal to adoption, (4) the circuit court violated their right to confront witnesses when it permitted a witness to testify against them by telephone, and (5) the petition for termination of parental rights is barred by the doctrine of *res judicata*. Mother argues that (1) the circuit court erred in permitting Patricia Legget to testify as to her concerns if C.B. returned home, and (2) the circuit court erred in permitting Emily Dutton, mother's daughter, to testify. Because we agree with the parents that the evidence was not sufficient to terminate either mother's or father's parental rights, we reverse the judgment of the circuit court and, thus, need not address mother's and father's remaining arguments.

ANALYSIS

Mother and father argue that the evidence was insufficient to terminate their parental rights to C.B. We agree.

It is well settled that "[w]hen addressing matters concerning a child . . . the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990). "Statutes terminating the legal relationship between parent and child should be interpreted consistently with the governmental objective of preserving, when possible, the parent-child relationship." Weaver v. Roanoke Dep't of Human Resources, 220 Va. 921, 926, 265 S.E.2d 692, 695 (1980). The circuit court's judgment, "'when based on evidence heard *ore*

---

[2] Father also argues that the evidence was insufficient to prove that termination of his parental rights was in the child's best interests. Because this question presented and mother's and father's first two common questions presented are essentially the same, we address all three questions presented together.

- 2 -

*tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'"

M.G. v. Albemarle County Dep't of Soc. Servs., 41 Va. App. 170, 181, 583 S.E.2d 761, 766

(2003) (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)).

Code § 16.1-283(C)(2) provides[3]:

> The residual parental rights of a parent or parents of a child placed
> in foster care as a result of court commitment . . . may be
> terminated if the court finds, based upon clear and convincing
> evidence, that it is in the best interests of the child and that:

> The parent or parents, without good cause, have been unwilling or
> unable within a reasonable period of time not to exceed twelve
> months from the date the child was placed in foster care to remedy
> substantially the conditions which led to or required continuation
> of the child's foster care placement, notwithstanding the
> reasonable and appropriate efforts of social, medical, mental health
> or other rehabilitative agencies to such end.

Thus, in order to terminate mother's and father's parental rights under Code

§ 16.1-283(C)(2), the Spotsylvania Department of Social Services (SDSS) had to prove, by clear

and convincing evidence, that (1) termination of their respective parental rights was in C.B.'s

best interest, (2) mother and father, without good cause, have been unwilling or unable to

substantially remedy the conditions which led to C.B.'s placement in foster care, and (3) SDSS

made reasonable and appropriate efforts to assist mother and father remedy the conditions. The

record does not support the finding that mother and father, without good cause, have been unable

or unwilling to remedy the conditions leading to C.B.'s placement in foster care.

When SDSS first placed C.B. into foster care in October 2004, it was because mother had

suffered a psychotic breakdown, had to be hospitalized, and was unable to care for C.B.

---

[3] On brief, mother and father argue that the evidence was insufficient to support a
termination of parental rights under Code § 16.1-283(B), while the circuit court, in fact,
terminated both mother's and father's parental rights under Code § 16.1-283(C)(2). However,
although not citing the precise subsection of the statute, mother and father both argued the
substantive language of Code § 16.1-283(C)(2) on brief and at oral argument. Accordingly, we
will address the merits of their argument.

Mother's and father's home was filthy, and SDSS was unable to locate father, who appeared uninvolved with and uneducated about mother's condition. Thus, SDSS could not return C.B. home, because he would have been "subjected to an imminent threat to life or health to the extent that severe or irremediable injury would be likely to result if [C.B.] were returned to or left in the custody of his parents." At the time of mother's hospitalization, she was not taking anti-psychosis medication.

Although mother has sometimes taken less than the recommended dose, the record shows that she has taken anti-psychosis medication since her hospitalization. As a result, she has had no more psychotic breakdowns, nor has she required any further hospitalizations. Father gave unrebutted testimony that he was now aware of mother's condition, that it was a permanent condition that would require lifelong medication, that he asks her if she has taken her medication, and that he would "call 911" if she were to have another psychotic episode. Furthermore, father had found a day care provider for C.B. to attend and appeared able to pay for it. Thus, the record does not support a finding that C.B. would still be subject to an "imminent threat to [his] life or health" or that he would experience "irremediable injury" were he to resume living with mother and father. Rather, the record shows that the parents had substantially complied with the goals set by the court and that the situation had substantially improved. SDSS presented no other evidence that mother and father had failed to remedy this condition within twelve months of C.B.'s placement in foster care.

Although SDSS concedes that both mother and father largely met the goals of their respective foster care plans, it argues that the evidence was nonetheless sufficient to terminate mother's and father's parental rights to C.B. because of the other "concerns" of the social workers involved in the case. The specific "concerns" SDSS cites are that mother had once used a serrated steak knife to feed C.B. peanut butter, had left her medications unsecured on a table

- 4 -

where C.B. could potentially ingest them, that one SDSS worker had generally described their home as "unsafe," that C.B. did not show enough affection toward his parents, that mother had inappropriately compared C.B. to his older sister, that both parents allowed C.B. to eat too may sweets, and mother's and father's apparent ineptitude at operating a car seat. While these "concerns" may potentially relate to C.B.'s best interests, they do not relate to mother's psychotic condition, nor do they relate to the specific goals outlined in each parent's foster care plan.

The circuit court found that mother and father did not "appropriately recogniz[e] the severe limitations that their situation imposes upon their ability to provide a nurturing environment for [C.B.]." This failure on mother's and father's part was arguably one of the conditions that first led to C.B.'s foster care placement. Nonetheless, the record does not support a finding that mother and father had failed to substantially remedy the conditions that led to C.B.'s placement into foster care within a reasonable amount of time. Therefore, the judgment of the circuit court finding to the contrary was "'plainly wrong [and] without evidence to support it.'" M.G., 41 Va. App. at 181, 583 S.E.2d at 766 (quoting Peple, 5 Va. App. at 422, 364 S.E.2d at 237). We reverse the judgment of the circuit court as to both mother and father.

CONCLUSION

Because the evidence was insufficient as a matter of law to terminate mother's and father's residual parental rights to their son, C.B., we reverse the judgment of the circuit court and dismiss the parental termination petitions with respect to each parent.

Reversed and dismissed.