COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Humphreys and Petty
Argued at Richmond, Virginia


KATHY W. DISHER

                                                            MEMORANDUM OPINION[*] BY
v.         Record No. 1266-09-2                        JUDGE ROBERT J. HUMPHREYS
                                                                FEBRUARY 23, 2010
DINWIDDIE COUNTY DEPARTMENT
  OF SOCIAL SERVICES


                   FROM THE CIRCUIT COURT OF DINWIDDIE COUNTY
                              Pamela S. Baskervill, Judge

            George F. Marable, III, for appellant.

            (Joan M. O'Donnell; Sherry L. Gill, Guardian *ad litem* for the
            minor child; Jacobs, Caudill, Gill & Barnes, on brief), for appellee.
            Appellee and Guardian *ad litem* submitting on brief.


        Kathy W. Disher ("Disher") appeals an order of the Circuit Court of Dinwiddie County

("the circuit court"), terminating her parental rights in her child, K.D.  On appeal, Disher

contends that the trial court erred in finding that:  (1) Dinwiddie County Department of Social

Services ("DSS") produced clear and convincing evidence to support the termination of Disher's

parental rights pursuant to Code § 16.1-283, and (2) Disher, without good cause, had been

unwilling or unable to remedy substantially the conditions which led to or required the

continuation of K.D.'s placement in foster care, within a reasonable period of time.  For the

following reasons, we affirm the circuit court.[1]

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] As the parties are fully conversant with the record in this case, and because this
memorandum opinion carries no precedential value, we recite only those facts and incidents of
the proceedings as are necessary to the parties' understanding of this appeal.

On May 8, 2009, following a *de novo* appeal from the Dinwiddie County Juvenile and Domestic Relations District Court ("JDR court"), the circuit court found that the evidence presented by DSS was sufficient to support the involuntary termination of Disher's parental rights in K.D. In its ruling, the circuit court set forth two, alternative bases for the termination of Disher's parental rights. First, the circuit court found:

> [P]ursuant to [] Code § 16.1-283B, that the child was placed in foster care as a result of court commitment; that it is in the best interests of the child for the [c]ourt to terminate the mother's residual parental rights; that the neglect or abuse suffered by such child presented a serious and substantial threat to her life, health or development; and that it is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to the mother within a reasonable period of time.[2]

In the alternative, the circuit court found:

> [P]ursuant to [] Code § 16.1-283C, that the child was placed in foster care as a result of court commitment, that it is in the best interests of the child for the mother's residual parental rights to be terminated, and that the mother, without good cause, has been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required the continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

The circuit court further found that

> [Disher], without good cause, has failed to or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement

---

[2] The circuit court also found, pursuant to Code § 16.1-283(B)(2)(c), "that the mother, without good cause, has not responded to or followed through with appropriate, available and reasonable rehabilitative efforts on the part of social, medical, mental health or other rehabilitative agencies designed to reduce, eliminate or prevent the neglect or abuse of the child."

in accordance with her obligations under and within the limits or goals set forth in the Foster Care Service Plan filed with the court.[3]

Thus, the circuit court terminated Disher's residual parental rights in K.D.

"'[T]he rights of parents [in their children] may not be severed lightly.'" M.G. v. Albemarle County Dep't of Soc. Servs., 41 Va. App. 170, 187, 583 S.E.2d 761, 769 (2003) (quoting Ward v. Faw, 219 Va. 1120, 1124, 253 S.E.2d 658, 661 (1979)).  Nevertheless, "[w]hen addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).  Thus, "trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990).

In this case, the circuit court terminated Disher's parental rights pursuant to both Code § 16.1-283(B) and Code § 16.1-283(C)(2).  "Though we have sometimes blurred the distinctions between the discrete subsections of Code § 16.1-283," subsections (B) and (C)(2) "'set forth individual bases upon which a petitioner may seek to terminate residual parental rights.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 269, 616 S.E.2d 765, 771 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 563, 580 S.E.2d 463, 466 (2003)).  The dissimilarity between each subsection "stems from the differing precipitating events leading to the need to remove the child from the home in the first place." Id. at 271, 616 S.E.2d at 772.  Disher takes issue with the circuit court's rulings under each subsection.  For the sake of clarity, we will address each of Disher's arguments in turn.

---

[3] In addition, the circuit court found that "there are no relatives known to DSS at this time who are available and suitable for placement of the child."

I.  Code § 16.1-283(B)

Disher contends that the circuit court erred in finding that DSS produced clear and convincing evidence, under Code § 16.1-283(B), to support the termination of her parental rights in K.D.  Essentially, Disher argues that her daughter's truancy was not a valid, legal basis for termination.

Code § 16.1-283(B) provides, in pertinent part, that:

> The residual parental rights of a parent or parents of a child *found by the court to be neglected or abused* and placed in foster care as a result of (i) court commitment; (ii) an entrustment agreement entered into by the parent or parents; or (iii) other voluntary relinquishment by the parent or parents may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:
>
> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time.  In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

(Emphasis added).  As the plain language of the statute makes clear, there are two, threshold findings that a court must make before terminating the residual parental rights of a parent, pursuant to Code § 16.1-283(B).  First, the child must have been "*found by the court to be neglected or abused*."  Id.  Second, the child must have been placed in foster care as the result of either a "(i) court commitment; (ii) an entrustment agreement entered into by the parent or parents; or (iii) other voluntary relinquishment by the parent or parents."  Id.

In this case, neither the JDR court nor the circuit court found that K.D. was an abused or neglected child.  In fact, the petitions originally filed with the JDR court, which ultimately led to

- 4 -

K.D.'s placement in foster care, did not allege that she was an abused or neglected child, but rather that she was a "child in need of services," based on her continued absence from school. As we have previously stated, "[t]he precipitating event of subsection B is a judicial finding of neglect or abuse." Toms, 46 Va. App. at 271, 616 S.E.2d at 772. Therefore, absent such a finding, the circuit court's termination of Disher's parental rights in K.D., pursuant to Code § 16.1-283(B), was improper, and we need not address the issue further.

## II. Code § 16.1-283(C)(2)

Disher also contends that the circuit court erred in terminating her residual parental rights pursuant to Code § 16.1-283(C)(2). Disher claims that: (1) she substantially remedied the conditions, which led to K.D.'s placement in foster care and (2) she had good cause as to why K.D.'s truancy remained an issue. We disagree.

Code § 16.1-283(C) allows a court to terminate the residual parental rights of a parent of a child placed in foster care as a result of a court commitment, if the court finds by clear and convincing evidence that it is in the best interests of the child and that:

> (2) the parent . . . without good cause, [has] been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. *Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition.* The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

(Emphasis added).

- 5 -

In contrast to subsection (B), a court's decision to terminate parental rights under Code § 16.1-283(C) "hinge[s] not so much on the magnitude of the problem that created the original danger to the child, but on *the demonstrated failure of the parent to make reasonable changes*." Toms, 46 Va. App. at 271, 616 S.E.2d at 772 (emphasis added). "Considerably more 'retrospective in nature [than subsection (B)],' subsection (C) requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he [or she] has been offered rehabilitation services." Id. Because "'[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities,'" M.G., 41 Va. App. at 188, 583 S.E.2d at 769 (quoting Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990)), subsection (C)(2) allows a parent "a reasonable period of time not to exceed twelve months," in which to substantially remedy the conditions that led to their child's placement in foster care, Code § 16.1-283(C)(2).

Contrary to her contention, the evidence in the record demonstrates both that Disher was unable to substantially remedy the conditions that led to K.D.'s placement in foster care and that Disher did not live up to her obligations as set forth in the foster care plan filed with the court. Twice, K.D. was removed from Disher's home due to her excessive absences from school. The first time, K.D. was sent to live with her maternal grandmother. A few months later, the JDR court returned K.D. to Disher's care, provided that Disher: ensure K.D.'s attendance at school, participate and cooperate with the Family Assessment and Planning Team, and ensure that K.D. attends all her medical and mental health appointments. Over the next year, K.D. continued to be excessively absent from school and stopped seeing her psychiatrist, as previously ordered. As

a result, K.D.'s guardian *ad litem* filed a second CHINS petition on her behalf.[4]  On March 30, 2007, K.D. was again removed from Disher's home and placed in the custody of DSS.

While K.D. was in foster care, Disher satisfied all that DSS required and appeared to be moving in the right direction.  In fact, DSS was so pleased with Disher's progress that, in December of 2007, they decided to return K.D. to her home on a trial basis.  However, once K.D. was back in Disher's home, the problems continued.  DSS soon discovered that K.D. was not attending school regularly and that Disher had missed several educational planning meetings concerning K.D.  When DSS went to Disher's home to investigate, they discovered K.D. there, rather than at school.  In addition, DSS learned that K.D.'s older brother was again living in Disher's home, in violation of Disher's obligations set forth in the foster care plan and the child protective order.[5]  At that point, K.D. was removed from Disher's home for a third time.

Based on the evidence in the record, we hold that the circuit court had sufficient factual grounds to support its finding that Disher,

> without good cause, has failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of [K.D.'s] foster care placement in accordance with her obligations under and within the time limits or goals set forth in the foster care service plan filed with the court.

Thus, we affirm the circuit court's decision to terminate Disher's parental rights pursuant to Code § 16.1-283(C)(2).

---

[4] A "CHINS petition" is a petition alleging a child in need of services.

[5] Evidence in the record demonstrated that K.D.'s seventeen-year-old brother suffers from "anger issues," and reportedly argues, curses and puts holes in the walls of the family home.  He has been diagnosed with ADHD and Intermittent Explosive Disorder.  In the child protective order filed with the court, Disher was not to allow K.D. to have any contact with her older brother unless authorized by DSS.

Conclusion

For the foregoing reasons, we hold that the circuit court erred in terminating Disher's residual parental rights pursuant to Code § 16.1-283(B).  However, because the circuit court's alternative ruling, terminating Disher's parental rights pursuant to Code § 16.1-283(C)(2), was proper, we affirm the circuit court's termination of Disher's parental rights.

<u>Affirmed.</u>