COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Kelsey and McClanahan
Argued at Salem, Virginia


ANTONIO OSORIO

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0340-10-3            CHIEF JUDGE WALTER S. FELTON, JR.
                                                      NOVEMBER 9, 2010
HARRISONBURG ROCKINGHAM
  SOCIAL SERVICES DISTRICT


               FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
                              James V. Lane, Judge

              Lynn C. Svonavec (Miner, Martin & Hahn, PLC, on brief), for
              appellant.

              Kim Van Horn Gutterman, Assistant County Attorney; Danita S.
              Alt, Guardian *ad litem* for the minor children, for appellee.


       Antonio Osorio ("father") appeals an order of the Circuit Court of Rockingham County

("trial court") terminating his residual parental rights to his minor children, E. and L.  He

contends his felony conviction for aggravated sexual battery, in violation of Code § 18.2-67.3, of

his girlfriend's seven and ten-year-old girls, who were not related to him and with whom he

resided at the time he sexually abused them, without more, does not constitute a basis for

terminating his residual parental rights under Code § 16.1-283(E)(iii).  He also asserts that the

trial court erred in terminating his residual parental rights to E. and L., contending that the

Harrisonburg Rockingham Social Services District ("HRSSD") failed to adequately investigate

_____

      [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

relative placement as required by Code § 16.1-283(A) and 16.1-283(A1).[1] For the following reasons, we affirm the judgment of the trial court.

## I. BACKGROUND

Father picked up Laura Davila ("mother") at a gas station when he was thirty-eight years old and she was thirteen years old. They had six children. The oldest child, H., a son, was born on August 28, 1995, when mother was fourteen years old.[2] Thereafter, the five children currently before the Court were born to the couple: J., a son, born on April 8, 1997; A., a son, born on July 21, 1998; D., a son, born on December 4, 1999; E., a daughter, born on August 21, 2001; and L., a daughter, born on June 16, 2003.

The family lived in Florida when mother separated from father in 2004. Father took the four boys and left Florida. In June 2005, father returned to Florida and took E., then age three and a half, and L., then two years old, from mother and moved to Texas. Father and the children later moved to Harrisonburg and lived with father's then girlfriend and her children.[3]

On April 4, 2008, HRSSD removed the children from father when he was arrested for sexually abusing his girlfriend's seven and ten-year-old daughters. Father was subsequently convicted, on his pleas of guilty, of aggravated sexual battery of the young girls.

HRSSD obtained custody of the children and placed them in foster care. While in foster care, E. and L. regularly attended counseling sessions. The girls had experienced so many transitions that it was "hard for them to create a coherent narrative of where they've been and

---

[1] The trial court also terminated Laura Davila's residual parental rights to E. and L. pursuant to Code § 16.1-283(C)(2). She also appealed the trial court's decision. See Davila v. Harrisonburg Rockingham Social Services District, No. 0387-10-3 (Va. Ct. App. Nov. 9, 2010).

[2] H. was not part of the proceedings before the trial court.

[3] H. lived with father until October 2007, when he was found delinquent and placed on probation in Harrisonburg. At father's request, mother came to Harrisonburg and took H. back to Florida with her.

- 2 -

where they've come from" when talking to their counselor. Their counselor testified at the parental termination hearing that the girls exhibited hypersexualized behaviors. Their foster father testified that the girls also exhibited these behaviors with each other, toward him, and while talking about sleeping with father in his bed while they lived with him.

Mother, with H., moved to Harrisonburg in June 2008 in an attempt to regain custody of the children. On July 24, 2009, HRSSD initiated a trial home placement of E. and L. with mother. Mother did not follow many of the guidelines set by HRSSD during the trial home placement. A HRSSD social worker told mother that E. and L. needed to continue counseling to address their hypersexualized behaviors and that both mother and the children needed to participate in the in-home counseling services HRSSD provided to her. However, mother cancelled multiple meetings with the in-home counselors, failed to return numerous phone calls to the in-home counselors and social workers, and did not schedule any counseling appointments for E. and L. Mother was also told anyone over eighteen years old needed a background check before being around E. and L. However, mother began dating a man a month after E. and L. began the trial home placement. She had the girls conceal that relationship from HRSSD. Mother was also instructed that all communication from father to E. and L. had to be pre-approved by HRSSD. Despite that directive, mother allowed father to communicate with E. and L., and gave them letters sent by father without first gaining approval from HRSSD.

On October 28, 2009, HRSSD removed E. and L. from mother's home. HRSSD filed foster care plans with the goal of adoption for E. and L. and petitions to terminate father's and mother's residual parental rights to E. and L. HRSSD also filed petitions to place J., A., and D. in permanent foster care.

After a hearing on the petitions, the trial court terminated father's and mother's residual parental rights to E. and L. and approved foster care plans with a goal of adoption for them. The trial court also ordered permanent foster care for J., A., and D.[4]

## II. ANALYSIS

"The termination of parental rights is a grave, drastic, and irreversible action." Lowe v. Dep't of Pub. Welfare, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986).

> When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests. On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Furthermore, the evidence is viewed in the light most favorable to the prevailing party below and its evidence is afforded all reasonable inferences fairly deducible therefrom.

Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (alteration in original) (citations omitted) (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)). "'In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley, 9 Va. App. at 328, 387 S.E.2d at 795). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)).

### A. Termination of Residual Parental Rights

On appeal, father contends his felony conviction for aggravated sexual battery, in violation of Code § 18.2-67.3, of two children, ages seven and ten, with whom he resided at the

---

[4] On appeal, father does not contest permanent foster care placement for the three boys.

time of the offense, without more, does not constitute a basis for terminating his residual parental rights to E. and L. under Code § 16.1-283(E)(iii).

> The residual parental rights of a parent or parents of a child who is in the custody of a local board or licensed child-placing agency may be terminated by the court if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that . . . (iii) the parent has been convicted of an offense under the laws of this Commonwealth . . . that constitutes . . . felony sexual assault, if the victim of the offense was a child of the parent or a child with whom the parent resided at the time of such offense . . . .

Code § 16.1-283(E).

> Code § 16.1-283(E) requires proof by clear and convincing evidence *not only* that the parent was convicted of felony sexual assault of a child of the parent or a child with whom the parent resided *but also* that the termination of parental rights is in the best interests of the specific child or children regarding whom termination is sought.

M. G. v. Albemarle Cnty. Dep't of Soc. Servs., 41 Va. App. 170, 187, 583 S.E.2d 761, 769 (2003).

At the parental termination hearing, father conceded: "The Court certainly because of [father's] felony conviction does have the right to deprive him of his parental rights for that reason alone. The Court need not do so, but the Court certainly may." We conclude that the trial court did not err in finding the evidence presented at the parental termination hearing was sufficient to terminate father's residual parental rights to E. and L.

On his plea of guilty, father was convicted of felony aggravated sexual battery, in violation of Code § 18.2-67.3, of two young girls, ages seven and ten, with whom he resided at the time of the offense.[5] See M. G., 41 Va. App. at 184, 583 S.E.2d at 768 ("holding that felony sexual assault

---

[5] At the time of the parental termination hearing, father was serving a fifteen-year sentence of incarceration, twelve years of which were suspended. See M. G., 41 Va. App. at 188, 583 S.E.2d at 769 ("'It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities.'" (alteration in original) (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990))).

[under Code § 16.1-283(E)(iii)] encompasses . . . aggravated sexual battery as prescribed in Code § 18.2-67.3"). In addition, this incident occurred while E. and L., who were close in age to the two girls father was convicted of sexually abusing, were living in that same residence. The trial court heard testimony that E. and L. exhibited hypersexualized behavior toward each other as well as toward their foster father and that E. and L. also exhibited these behaviors while talking about sleeping with father in his bed while they lived with him. Moreover, the record reflects that father was twenty-five years older than mother, who he picked up at a gas station when she was thirteen years old. Mother thereafter gave birth to three of their six children by him by the time she was eighteen.

After hearing the testimony and argument of counsel, the trial court stated:

> The father is quite frankly an individual who is a convicted sex offender. He was convicted of aggravated sexual battery. And I do not feel it would be appropriate in any way, he has had very little, if any, contact as a result of his own crimes with these children.

The trial court concluded that HRSSD provided clear and convincing evidence that termination of father's residual parental rights with the goal of adoption was in the best interests of E. and L.

We conclude the trial court did not err in terminating father's residual parental rights to E. and L. pursuant to Code § 16.1-283(E)(iii).

## B. Relative Placement

Father also contends the trial court erred in terminating his residual parental rights to E. and L. because HRSSD failed to investigate relative placement with his brother Hector as required by Code § 16.1-283(A) and 16.1-283(A1).[6]

When father was arrested in April 2008, he called his brother Hector asking him to assume custody of all five children. Hector did not do so at that time after learning mother

---

[6] Hector did not seek custody of J., A., and D.

would seek custody of the children. A HRSSD social worker testified that she did not thereafter pursue relative placement with Hector, nor did Hector thereafter contact HRSSD to obtain custody of the children. Another HRSSD social worker testified that after E. and L. were removed from mother's custody on October 28, 2009, she sent Hector a letter asking him to contact her if he was interested in obtaining custody of the children. Within a week after that letter was mailed, Hector called the social worker and left a message. She returned his call the following day, three days before the scheduled parental termination hearing in the juvenile and domestic relations district court. She informed him that if he wanted custody of the children he would need to file the appropriate paperwork with the juvenile and domestic relations district court prior to the scheduled hearing. Hector appeared before both the juvenile and domestic relations district court and the trial court and testified that he wanted to have custody of the two girls, E. and L. However, Hector never filed a petition to obtain custody of the girls.

Code § 16.1-283(A) "requires that the court 'give a consideration to granting custody to relatives of the child' prior to terminating parental rights and placing the child in the custody of social services." Hawthorne v. Smyth Cnty. Dep't of Soc. Servs., 33 Va. App. 130, 139, 531 S.E.2d 639, 644 (2000) (quoting Code § 16.1-283(A)). "[T]he Department [of Social Services] has a duty to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." Logan, 13 Va. App. at 131, 409 S.E.2d at 465. However, Code § 16.1-283 provides that a trial court may transfer custody of a child to the child's relative if that relative:

> (i) is found by the court to be willing and qualified to receive and care for the child; (ii) is willing to have a positive, continuous relationship with the child; (iii) is committed to providing a

permanent, suitable home for the child; and (iv) is willing and has the ability to protect the child from abuse and neglect . . . .

Code § 16.1-283(A1).

Here, the trial court was provided sufficient evidence necessary for it to consider whether Hector, father's brother, was a willing and suitable person to be awarded custody of E. and L. Hector testified concerning his desire to acquire custody of E. and L. before the juvenile and domestic relations district court as well as the trial court. He testified that he lived in New York in "either a two or three bedroom home" with his daughter and two sons. Hector testified that he last saw E. and L. several years prior to the proceedings in the trial court. Hector told a HRSSD social worker that he did not know whether or not father committed the sexual battery for which he pleaded guilty, and when asked at the termination hearing whether he thought father sexually assaulted his girlfriend's seven and ten-year-old daughters, Hector said, "I am not a judge."

Even assuming, without deciding, that HRSSD failed to conduct an investigation to determine if placement of the children with a relative was appropriate pursuant to Code § 16.1-283, we nevertheless conclude that any such error was, at best, harmless error. From the evidence, including Hector's testimony, the trial court found Hector to be "extremely reluctant" in asking for custody of E. and L., stating that "[h]e is only doing this as a last ditch effort to try to save the children from going to strangers and . . . he doesn't have the enthusiasm or really the willingness to do what he's going to have to do to undertake that tremendous cost and responsibility . . . ." See Hawthorne, 33 Va. App. at 139, 531 S.E.2d at 644 ("Because [the relative] testified as to her suitability to assume custody of [the child], there was no reason to require DSS to investigate her, as the court had before it all the evidence necessary to consider [the relative] as a possible custodian."); see also Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) ("The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that

evidence as it is presented.").  Accordingly, we conclude that the trial court did not err in terminating father's residual parental rights to E. and L. and in declining to place those children with Hector.

For the foregoing reasons, we affirm the judgment of the trial court.

<u>Affirmed.</u>

Kelsey, J., concurring.

I fully concur with Chief Judge Felton's opinion. I write separately, however, to join in Judge Bumgardner's criticism of our interpretation of Code § 16.1-283(A) to require consideration of placement with relatives as a prerequisite to a parental termination decision. Hawthorne v. Smyth Cnty. Dep't of Soc. Servs., 33 Va. App. 130, 140-41, 531 S.E.2d 639, 644 (2000) (Bumgardner, J., concurring and dissenting in part). Whether a parent has forfeited his or her parental rights should not depend on whether the parent has good or bad relatives. Good relatives do not make an unfit parent fit any more than bad relatives make a fit parent unfit. As Judge Bumgardner pointed out in Hawthorne, the relative-placement consideration in Code § 16.1-283(A) relates only to the trial court's custody, not its termination, determination. Our precedent, however, has fused together these very different issues.