COURT OF APPEALS OF VIRGINIA

Present:    Judges Fulton, Friedman and Raphael
Argued by videoconference

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.        Record No. 1341-22-3        JUDGE JUNIUS P. FULTON, III
                                      FEBRUARY 7, 2023

CHRISTOPHER NEIL DOTSON


FROM THE CIRCUIT COURT OF HENRY COUNTY
James R. McGarry, Judge

John W. Beamer, Assistant Attorney General (Jason S. Miyares,
Attorney General, on briefs), for appellant.

Samantha Offutt Thames, Senior Appellate Attorney (Virginia
Indigent Defense Commission, on brief), for appellee.


Christopher Neil Dotson is charged with two counts of possessing a controlled substance,

possessing controlled paraphernalia, and possessing marijuana.  On August 5, 2022, Dotson filed a

motion to suppress evidence obtained by police during a search of his vehicle.  Following an

evidentiary hearing and argument by counsel, the circuit court granted Dotson's motion, holding

that no probable cause existed to justify the search under the Fourth Amendment.  The

Commonwealth appealed.  For the following reasons, we reverse and remand.

BACKGROUND

When considering on appeal the trial court's grant of a motion to suppress, we view the

evidence in the light most favorable to Dotson, the prevailing party below, and grant him all

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

reasonable inferences fairly deducible from that evidence. *Sidney v. Commonwealth*, 280 Va. 517, 520 (2010); *Commonwealth v. Grimstead*, 12 Va. App. 1066, 1067 (1991).

The circuit court held an evidentiary hearing on August 16, 2022. The only evidence the circuit court received at that hearing was in the form of the testimony of Daquan Hodge, a deputy sheriff with the Henry County Sheriff's Office at the time of the search. Hodge testified that on June 24, 2021, he was dispatched to 3801 Fairystone Park Highway, located in a business area in Bassett, Virginia, in reference to a report that someone was "smoking something" in the area. When Hodge arrived, he found Dotson alone in the driver's seat of his truck. The truck was legally parked in front of a retail establishment in a public lot, with the windows open. Dotson's mouth was "agape," and he was "twitching." On cross-examination, Hodge clarified that Dotson's "position reminded [him] of drug overdoses." Hodge attempted to wake Dotson but was unsuccessful. After attempting to awaken Dotson, Hodge circled the truck to see if there were any weapons in plain view. While circling the truck, Hodge observed that there was a large empty knife sheath, approximately one foot to eighteen inches in length, "in the passenger's side area of the truck," an open black handbag-sized satchel in Dotson's lap with what Hodge believed to be marijuana protruding out of it, and an unlabeled, translucent-orange pill bottle also in Dotson's lap.

Ultimately, Hodge was able to wake Dotson and they started talking. Dotson told Hodge that he was "tired, sleepy, and just trying to get back home." When Hodge motioned to the satchel and pill bottle in Dotson's lap and asked, "what's that?" Dotson immediately handed Hodge the pill bottle, explaining that "everything was his girlfriend's." Without opening the bottle, Hodge observed that the pills in the bottle were blue, and based on observing similar pills in the past, he believed the pills to be Xanax. Hodge later consulted with a pill identifier book to confirm that the pills were, in fact, Xanax pills.

- 2 -

Because Dotson was "moving around" and "being fidgety," Hodge requested that he get out of the truck. Dotson complied and was handcuffed and placed in the rear of Hodge's police vehicle. While detained in Hodge's vehicle, Dotson repeated that "anything in the vehicle would be his girlfriend's." Hodge ran a criminal history check on Dotson and discovered that he was a convicted felon.

Hodge returned to the truck and did a "wingspan" search to see if he could locate the knife from the empty sheath. Hodge was unable to locate the knife. Hodge then proceeded to search the black satchel, which Dotson had removed from his lap and placed on the driver's seat of the truck. Inside the satchel, Hodge found "green plant-like material," a white powdery substance which field tested positive for cocaine, a crystal-like substance that field tested positive for methamphetamine, three "grinders," and "multiple smoking devices."

The trial court granted Dotson's motion and suppressed the evidence, ruling from the bench. In doing so, the trial court found that Hodge, in essence, responded to a call for a well-being check and that Hodge was handed the pill bottle and he "thought that they might be Xanax." The trial court noted that Hodge did not testify that he thought the pills were "illegal at that time." Moreover, the trial court emphasized that Hodge did not arrest Dotson at that point for possessing a prescription medication without a prescription. The trial court stated, "[t]he pills maybe could have gotten there, but that's not his testimony. That's not the testimony today that he searched it because he thought Mr. Dotson was in possession of illegal prescription medication. I think he was honest with his testimony, that's not what he was thinking."

The trial court stated that marijuana possession was a civil offense, which could not give rise to probable cause to search a vehicle. The trial court suspected that the officer had been operating under the "old law" when he conducted this search, and a reasonable officer should have known better.

Finally, the trial court found that Hodge "didn't testify to anything that would give him reasonable suspicion or probable cause to search the vehicle." The trial court determined that an empty knife sheath was not enough for probable cause to search, and if the officer was actually concerned with officer safety, the trial court stated that Hodge could have patted Dotson down. The trial court explicitly found that this information, in total, was not enough for Hodge to assume "oh, he must be in possession of the knife that used to be in there."

Accordingly, the trial court granted the defendant's motion to suppress the evidence found in the satchel. The trial court's order listed case numbers for the misdemeanor charges (CR21-0746 & -0773) and felony charges of possession of methamphetamine and cocaine (CR21-0744 & -0745). Thus, the ruling applied to all four charges in the case.

That same day, September 6, 2022, the Commonwealth filed its notice of appeal and accompanying certificate. However, the notice of appeal noted only one misdemeanor case number (CR21-0746) and one felony case number (CR21-0745), as cases to be appealed. The body of the notice stated that the Commonwealth was appealing "the judgment entered by the Henry County Circuit Court on September 6, 2022, which ordered the evidence seized from the defendant suppressed for purposes of trial." The accompanying certificate filed by the Commonwealth certified, among other things, that "the suppressed evidence is substantial proof of facts material to the Commonwealth's case, to wit: illegal narcotics (cocaine and methamphetamine)."

Seemingly realizing the omission, the Commonwealth filed an amended notice of appeal on September 30, 2022. The amended notice of appeal included both felony case numbers (CR21-0744 and -0745), as well as both misdemeanor case numbers. The Commonwealth did so without leave to amend.

## ANALYSIS

The Commonwealth appeals the trial court's ruling on the motion to suppress, arguing that: (1) the totality of the circumstances demonstrated that Hodge had probable cause to believe that Dotson was in possession of illegal narcotics, (2) the totality of the circumstances demonstrated that Hodge had probable cause to believe that Dotson was in possession of a concealed weapon as a convicted felon, and (3) the trial court erred in determining that the observation of marijuana in Dotson's possession could not give rise to probable cause to search Dotson's vehicle.

This Court granted the Commonwealth's petition for appeal on November 9, 2022. In that order, this Court also directed the parties to brief the issue of:

> Whether this Court has jurisdiction to consider the appeal in CR21-0744 given that the notice of appeal filed on September 6, 2022, did not identify it as being subject to the Commonwealth's appeal and the amended notice of appeal filed on September 30, 2022, was not filed within the time permitted under Code § 19.2-400.

Further, this Court's order clarified that this Court does not have jurisdiction to consider a Commonwealth's appeal in misdemeanor cases, pursuant to Code § 19.2-398(A).[1]

Because we determine that this Court does have jurisdiction to consider the appeal in case number CR21-0744, and the totality of the circumstances gave rise to probable cause at the time of the search for Hodge to believe that Dotson was in possession of illegal substances, we do not reach the second and third assignments of error. We reverse the trial court's decision and remand for further proceedings consistent with this decision.

---

[1] To the extent that the Commonwealth attempts to appeal the trial court's ruling as it pertains to the two misdemeanors, we dismiss any such appeal for lack of jurisdiction pursuant to Code § 19.2-398(A).

*I. This Court's Jurisdiction over Case Number (CR21-0744)*

Raising this issue sua sponte, this Court inquired of the parties whether the Commonwealth had forfeited its appeal of the possession charge related to methamphetamine by failing to include the relevant case number, (CR21-0744), in the notice of appeal, thus depriving this Court of subject matter jurisdiction over the appeal for that case.

It has long been held that the "constitutional and statutory authority for Commonwealth appeals is narrowly circumscribed," *Commonwealth v. Brown*, 8 Va. App. 41, 43 (1989), and is limited to those rights explicitly granted to them by the General Assembly. *See* Va. Const. art. VI, § 1. "A litigant who seeks to appeal a judgment to . . . the Court of Appeals must file a notice of appeal." *Nicholson v. Commonwealth*, 300 Va. 17, 22 (2021). Code § 19.2-400 requires that the Commonwealth's notice of appeal is filed "within seven days after entry of the order of the circuit court from which the appeal is taken." While any other defect in the notice of appeal may be considered "procedural," and waivable on appeal, the timeliness of the notice and adequately identifying the case to be appealed are mandatory requirements that must be met before this Court may exercise jurisdiction over the case. *Roberson v. Commonwealth*, 279 Va. 396, 407 (2010). "As its name indicates, 'the purpose of the notice of appeal is merely to place the opposing party on notice and to direct the clerk to prepare the record on appeal.'" *Nicholson*, 300 Va. at 22 (quoting *LaCava v. Commonwealth*, 283 Va. 465, 469 n.* (2012)). "Given the simple function of the notice of appeal, which is to provide notice, we have 'never required that a notice of appeal be precise, accurate, and correct in every detail before [an] appellate court can acquire jurisdiction over the case in which the notice is filed.'" *Id.* (quoting *Ghameshlouy v. Commonwealth*, 279 Va. 379, 391 (2010)). "In order to confer active jurisdiction on an appellate court, a notice of appeal must be timely, and it must 'adequately identif[y] the case to be appealed.'" *Id.* (quoting *Roberson*, 279 Va. at 407). "Any defect in the notice of appeal that

- 6 -

does not touch on its timeliness or the identity of the case to be appealed is procedural only." *Id.* (quoting *Roberson*, 279 Va. at 407).

As an initial matter, we agree with Dotson that the amended notice of appeal, filed September 30, 2022, was untimely filed, and our Court would have no jurisdiction to consider an appeal pursuant to that notice. Therefore, it is the September 6, 2022 notice of appeal that must adequately identify the case or cases to be appealed in order for this Court to exercise jurisdiction over the appeal related to case number CR21-0744, the methamphetamine charge.

The Commonwealth first characterizes its failure to include the case number for CR21-0744 as merely a "procedural defect" which does not prevent this Court from obtaining jurisdiction over the entire case. As our Supreme Court has stated, however: "A docket number . . . does more than direct the clerk to file a pleading. A docket number is a specific identifier for a particular case. . . . A docket number is relevant in identifying the case that is being appealed." *Nicholson*, 300 Va. at 23-24.

While the September 6, 2022 notice of appeal included sufficient information to identify the *trial court judgment* from which the Commonwealth wished to appeal, the notice of appeal did not properly identify *the cases* it was appealing—at least as to the possession of methamphetamine charge (CR21-0744). The motion and suppression hearing conducted on August 16, 2022, pertained to four separate charges each of which is its own case, as indicated by the case numbers assigned to the charges by the clerk of the trial court. There was nothing in the notice which would lead one to conclude that the Commonwealth intended to appeal the trial court's decision as to all four cases. Instead, the notice merely indicated the Commonwealth's intention to appeal the two cases it identified in the September 6, 2022 notice of appeal: (1) possession of cocaine (CR21-0745), and (2) possession of drug paraphernalia (CR21-0746).

- 7 -

The notice of appeal, therefore, by itself, is insufficient to satisfy the jurisdictional requirement that the notice of appeal identify the case or cases to be appealed.

This is not the end of the inquiry, however, as the Commonwealth raises a second argument. The Commonwealth argues that the information contained in the "certificate," filed with the notice of appeal pursuant to Code § 19.2-400 and Rule 5A:6(d), adequately "identifies the types of cases, possession of 'illegal narcotics (cocaine and methamphetamine).'" The Commonwealth argues that the certificate may be read in conjunction with the notice of appeal to cure any deficiency the notice may have in adequately identifying the cases to be appealed. We agree.

While this Court has not directly addressed this issue, several Virginia appellate cases stand for the proposition that the "certificate" may supplement the notice of appeal in order to fulfill the requirements of the notice.

Quoting *M.G. v. Albemarle County Department of Social Services*, 41 Va. App. 170, 177 (2003), Dotson argues that "this Court has 'never held . . . that Rule 5A:6(d)'s provisions regarding the contents of the accompanying certificate are jurisdictional.'" Dotson maintains that "[i]t therefore stands to reason that jurisdictional information—such as the identity of the case appealed . . . cannot be contained in the certificate, but rather in the notice itself." This quotation is taken out of context, however, and the decision in *M.G.* actually weighs in favor of the Commonwealth in the instant case.

This Court in *M.G.* simply clarified that the information and certifications that must be included in the certificate are not jurisdictional, but merely procedural, and therefore waivable by either party, similar to the requirements for the notice of appeal, save for timeliness of the notice and identification of the case to be appealed. What this Court *did not* do was draw an iron curtain between the two, and never the twain shall meet. In taking a closer look at *M.G.*, we note

that this Court actually utilized the notice of appeal in conjunction with the accompanying certificate to fulfill the requirements of each. *See M.G.*, 41 Va. App. at 178-79 ("Although the certificate did not indicate whether mother mailed a copy of the notice to the children's guardian *ad litem*, the notice of appeal was accompanied by a cover letter signed by mother's guardian *ad litem* that did, in fact, provide such information. . . . Thus, the record establishes that appellant complied with the requirements of Rule 5A:6(a) . . . . Further, although the certificate itself omitted other information required by Rule 5A:6(d), other portions of the notice contained everything but appellant's address, the name and address of the appellee, and the telephone number for appellee's counsel. The certificate clearly indicated that mother provided appellee's counsel with notice of the appeal."); *cf. Watkins v. Fairfax County Dep't of Fam. Servs.*, 42 Va. App. 760, 774 (2004) ("[A]ll the indispensable parties must be named, *in either the notice of appeal or the accompanying certificate*, thereby joining those parties in the appeal." (emphasis added)). While we agree with Dotson that the notice of appeal and the certificate "are two separate entities . . . with separate requirements and standard," we hold that the two may still supplement each other in appropriate cases.

Here, while the notice of appeal may have been deficient on its own, the accompanying certificate clarified what cases the Commonwealth intended to appeal by stating that the suppressed evidence was "substantial proof of facts material to the Commonwealth's case, to wit: *illegal narcotics (cocaine and methamphetamine)*." The certificate makes clear that the Commonwealth intended to appeal *both* the possession charge related to cocaine, as well as the possession charge related to methamphetamine. Because the Commonwealth did in fact file a timely notice of appeal, and because that notice of appeal, read in conjunction with the certificate, adequately identified the cases to be appealed, we hold that, under the facts of this case, dismissal for failure to satisfy the rules governing notice of appeal is not warranted, as we

- 9 -

have jurisdiction over the appeal related to case number CR21-0744. *Cf. Carlton v. Paxton*, 14 Va. App. 105, 111, *aff'd on reh'g en banc*, 15 Va. App. 265 (1992).

## II. Probable Cause

We turn next to the question of whether the search conducted by Hodge was justified. "In an appeal by the Commonwealth of an order of the circuit court suppressing evidence, the evidence must be viewed in the light most favorable to the defendant and findings of fact are entitled to a presumption of correctness unless they are plainly wrong or without evidence to support them." *Commonwealth v. Peterson*, 15 Va. App. 486, 487 (1992). However, this Court "review[s] *de novo* the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case." *Cherry v. Commonwealth*, 44 Va. App. 347, 356 (2004). "It is the appellant's burden to show that when viewing the evidence in such a manner, the trial court committed reversible error." *Aponte v. Commonwealth*, 68 Va. App. 146, 156 (2017) (quoting *Hairston v. Commonwealth*, 67 Va. App. 552, 560 (2017)).

The Commonwealth argues that the totality of the circumstances demonstrated that Hodge had probable cause to believe that Dotson was in possession of illegal narcotics.[2] We agree.

"Fourth Amendment jurisprudence recognizes three categories of police citizen [contacts]: (1) consensual encounters, (2) brief, minimally intrusive investigatory detentions based upon specific, articulable facts, commonly referred to as *Terry* stops, and (3) highly intrusive arrests and searches founded on probable cause." *Blevins v. Commonwealth*, 40 Va. App. 412, 420-21 (2003) (quoting *Wechsler v. Commonwealth*, 20 Va. App. 162, 169 (1995)). "A consensual encounter between the police and an individual 'will not trigger Fourth

---

[2] Because we agree with the Commonwealth's first assignment of error, we do not reach the second and third assignments of error, as judicial restraint obligates us to reach decisions on the best and narrowest grounds available. *See Commonwealth v. White*, 293 Va. 411, 419 (2017).

Amendment scrutiny unless it loses its consensual nature' and renders the person seized under the Fourth Amendment." *Beasley v. Commonwealth*, 60 Va. App. 381, 390 (2012) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)).

"Under the Fourth Amendment, officers cannot search a place without a warrant unless one of several delineated exceptions to this warrant requirement apply." *Duncan v. Commonwealth*, 55 Va. App. 175, 179 (2009) (citing *Flippo v. West Virginia*, 528 U.S. 11, 14 (1999)). "A warrantless search by the police is invalid unless it falls within one of the narrow and well-delineated exceptions to the warrant requirement." *Flippo*, 528 U.S. at 13 (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). "The Fourth Amendment prohibits only 'unreasonable searches and seizures,' not reasonable ones." *King v. Commonwealth*, 49 Va. App. 717, 723 (2007). "[T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . and 'requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.'" *Saal v. Commonwealth*, 72 Va. App. 413, 426 (2020) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). Further, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* (quoting *Bell*, 441 U.S. at 559).

"Under long-standing Fourth Amendment jurisprudence, a police officer may, before making an arrest and without obtaining a search warrant, search a vehicle . . . so long as the officer has probable cause to do so." *Curley v. Commonwealth*, 295 Va. 616, 621 (2018). "[P]robable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Jones v. Commonwealth*, 277 Va. 171, 178 (2009) (alteration in original) (quoting *United States v. Grubbs*, 547 U.S. 90, 95 (2006)). The automobile exception to the Fourth Amendment's warrant requirement is predicated upon the

fact that the officer believes the car contains evidence of a crime. *Duncan*, 55 Va. App. at 179 (quoting *Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999)). In evaluating "whether a police officer had probable cause to conduct a warrantless search of a vehicle, as occurred here, we examine the events leading up to the search, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Curley*, 295 Va. at 622 (quotation omitted).

Here, the testimony revealed that Hodge was dispatched to the scene following a report that somebody was smoking something in the area. There, Hodge found Dotson in the driver's seat of his truck. Hodge testified that Dotson's position reminded him of a drug overdose. Hodge "didn't know if [Dotson] was overdosing or what was going on." The windows were down. Hodge attempted to awaken Dotson, to no avail. Hodge then circled the truck, peering in through the windows, to look for possible weapons. He observed what he believed to be marijuana in an open satchel in the defendant's lap as well as an unlabeled, transparent pill bottle containing blue pills that Hodge believed to be Xanax. Hodge testified that he believed that the pills were Xanax pills because he had "seen blue pills like this before." Further, Hodge observed what he believed to be a knife sheath approximately one foot to eighteen inches in length in the back seat of the truck.

Hodge again attempted to awaken Dotson a second time by knocking on the outside of the truck, and Dotson stirred awake. Hodge asked Dotson about the open satchel in his lap as well as the unlabeled pill bottle, asking "what's that?" Dotson voluntarily handed the pill bottle to Hodge. Dotson immediately disclaimed ownership of everything in the truck, including the pill bottle, stating that anything in the truck belonged to his girlfriend. Hodge also testified that "Dotson wouldn't quit you know moving around, being fidgety, so [Hodge] instructed him to exit the vehicle." Dotson complied, and thereupon Hodge placed Dotson in handcuffs and took

Dotson to the back of Hodge's police vehicle. Once placed in the back of Hodge's police vehicle, Dotson again repeated that "anything in the vehicle would be his girlfriend's." Hodge ran a criminal history check on the defendant and discovered that he was a convicted felon. As Dotson correctly states, it was at this moment that the consensual encounter became a detention, of which thereafter any subsequent search of the vehicle would need to be supported by probable cause. *See Beasley*, 60 Va. App. at 390. Only after Hodge went back to the vehicle and searched the satchel did he find cocaine and methamphetamine.

Considering these facts objectively, based upon "a reasonable and trained police officer's view of the totality of the circumstances," *Brown v. Commonwealth*, 270 Va. 414, 419 (2005), Hodge had probable cause to believe that Dotson was in possession of illegal substances. Xanax is a Schedule IV controlled substance, and the possession of Xanax without a "valid prescription or order of a practitioner while acting in the course of his professional practice" is a Class 2 misdemeanor. *See* Code §§ 18.2-250(A)(b1), 54.1-3452. Hodge testified that he believed that the blue pills were Xanax because he had seen pills like that before. Further, the pills were in an unlabeled, translucent bottle, and Dotson immediately disclaimed them. Dotson was also fidgety and would not stop moving. And finally, Dotson again disclaimed anything found in the truck.

The fact that the pills were in an unmarked bottle adds to the likelihood that Dotson did not possess them lawfully, pursuant to a valid prescription. Further, Dotson's immediate disclaimer of the pills and his repeated assertion that anything found in the truck would be his girlfriend's demonstrated his guilty knowledge that there would be illegal contraband in the truck. *Covil v. Commonwealth*, 268 Va. 692, 696 (2004) (A "false or evasive account is a circumstance, similar to flight from a crime scene, that a fact-finder may properly consider as evidence of guilty knowledge."). These circumstances when coupled with the defendant's "fidgety" demeanor and prior felony conviction were sufficient to demonstrate there was "a fair

- 13 -

probability" that the defendant's truck contained further "contraband or evidence of a crime." *Jones*, 277 Va. at 178. And "[i]f the officer 'should . . . discover contraband other than [the contraband he was looking for] during this investigation, 'he . . . cannot be required to ignore [it], and the Fourth Amendment does not require its suppression in such circumstances.'" *Pierson v. Commonwealth*, 16 Va. App. 202, 204 (1993) (quoting *Michigan v. Long*, 463 U.S. 1032, 1050 (1983)). Therefore, Hodge's search after discovering Dotson's illegal possession of the Xanax pills was justified, as was his subsequent discovery of cocaine and methamphetamine in the satchel.

Dotson points out that the trial court, in making its ruling, expressly disavowed this theory of probable cause, stating:

> Deputy Hodge thought that [the pills] might be Xanax. Deputy Hodge didn't say anything about them potentially being illegal at that point in time. He didn't arrest Mr. Dotson at that time for possessing, you know, prescription medication without a prescription, or anything like that. . . . The pills maybe could have gotten there, but that's not his testimony. That's not the testimony today that he searched it because he thought Mr. Dotson was in possession of illegal prescription medication. I think he was honest with his testimony, that's not what he was thinking.

The trial court's observation of Hodge's subjective intent in searching the vehicle is not dispositive. "[A]n 'officer's *subjective characterization* of observed conduct is *not relevant*' to an objective application of the Fourth Amendment." *Mason v. Commonwealth*, 64 Va. App. 292, 302 (2015) (en banc) (quoting *Jones v. Commonwealth*, 279 Va. 665, 673 (2010)). "So strong is this principle that, even when an officer's testimony shows that he misjudged the legal basis for the stop, his subjective misjudgment does not undermine the objective validity of a stop that could be based on a wholly different legal basis." *Id.* at 302 n.5 (citing *Slayton v. Commonwealth*, 41 Va. App. 101, 109 (2003)). The fact that Hodge did not immediately arrest Dotson for illegal possession of Xanax is similarly inconsequential. *See Kentucky v. King*, 563

U.S. 452, 467 (2011) ("We have said that '[l]aw enforcement officers are under no constitutional duty to call a halt to criminal investigation the moment they have the minimum evidence to establish probable cause." (quoting *Hoffa v. United States*, 385 U.S. 293, 310 (1966))). The trial court therefore erred in suppressing this evidence.

## CONCLUSION

This Court has jurisdiction to consider the Commonwealth's appeal from case number CR21-0744. Viewed in the light most favorable to Dotson, the record contained sufficient evidence of probable cause to justify Hodge's search of Dotson's vehicle. The trial court therefore erred in granting Dotson's motion to suppress.

*Reversed and remanded.*